# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MARKO MILINKOVIC,

        Plaintiff,

vs.

AMERICAN FAMILY INSURANCE COMPANY; DOES I through X; and ROE CORPORATIONS I through X, inclusive,

        Defendants.

Case No.: 2:16-cv-01526-GMN-PAL

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 20), filed by Defendant American Family Insurance Company ("Defendant"). Plaintiff Marko Milinkovic ("Plaintiff") filed a Response, (ECF No. 21), and Defendant filed a Reply, (ECF No. 22). For the reasons discussed below, Defendant's Motion for Summary Judgment is **DENIED**.

## I.    BACKGROUND

This claim arises out of an automobile accident where Plaintiff sustained injuries and now seeks recovery from his insurance provider. In late 2011, Plaintiff purchased a 2012 Toyota Camry ("the vehicle"). (*See* Milinkovic Dep. at 5, Ex. 1 to Mot. for Summ. J. ("MSJ"), ECF No. 20-1). Then, in June of 2013, Plaintiff began the process of selling the vehicle to his cousin, Zoran Mancic ("Mancic"). (*See* Mancic Dep. 19:9, 21:13–17, Ex. 1 to Resp., ECF No. 21-1). Mancic paid Plaintiff $5,000 as a down payment on the vehicle with the understanding that Plaintiff would continue to make car payments until the final sale was completed. (*Id.* 20:7–25, 21:1–9). After providing the down payment, but without completing the purchase of the vehicle, Mancic took possession of the vehicle. (*Id.* 24:11–19). In June 2013, when

Plaintiff was still the registered owner of the vehicle, Mancic applied for and obtained automobile insurance from Defendant for the vehicle. (*Id.* 18:7–17, 33:12–14).

Defendant's insurance applications require applicants to disclose whether any driver has been convicted of any crime other than a motor vehicle violation. (*See* Melberg Decl. ¶¶ 11–13, Ex. 5 to MSJ, ECF No. 20-5). When Mancic completed the application, he did not identify Plaintiff as an owner or operator of the vehicle. (*See* Ex. 4 to MSJ at 1, ECF No. 20-4). Therefore, when asked whether any driver of the vehicle had "been convicted for [a crime] other than a motor vehicle violation," Mancic answered, "[n]o." (*See* Ex. 4 to MSJ at 2, ECF No. 20-4).

Moreover, Defendant's company policy at the time was that if a proposed owner or driver of a vehicle had ever been convicted of a felony, that driver and vehicle were disqualified from obtaining an automobile liability insurance policy through Defendant. (*See* Melberg Decl. ¶ 10, Ex. 5 to MSJ, ECF No. 20-5). Defendant's insurance policy stated that if any insured individual made false statements in his application, the policy was void with respect to all insured individuals. (*See* Ins. Pol'y, Ex. 6 to MSJ at 15, ECF No. 20-6).

In 2014, Plaintiff was still the registered owner of the vehicle although Mancic possessed the vehicle. (*See* Milinkovic Dep., Ex. 1 at 5 to MSJ, ECF No. 20-1); (*see also* Mancic Dep., Ex. 1 to Resp. 23:15–20, ECF No. 21-1). On October 16, 2014, Plaintiff retrieved the vehicle from Mancic's home, was subsequently involved in a motor vehicle accident, and sustained injuries. (*See* Milinkovic Dep. at 5, Ex. 1 to MSJ, ECF No. 20-1). As a result, Plaintiff submitted a claim to Defendant for the alleged damages incurred in the accident. (*See* Melberg Decl. ¶ 8, Ex. 5 to MSJ, ECF No. 20-5). After completing a claims investigation, Defendant notified Plaintiff and Mancic on May 28, 2015, that the policy was being voided and the premiums were being returned not only because Plaintiff was the

registered owner and operator of the vehicle, but also because he had been convicted of at least one felony. (*See* Ex. 8 to MSJ, ECF No. 20-8); (*see generally* Ex. 11 to MSJ, ECF No. 20-11).

After the policy was voided, Plaintiff brought a breach of contract claim against Defendant. (*See* Ex. 1 to Pet. for Removal, ECF No. 1-1). Defendant now seeks summary judgment in the instant Motion because it believes that the insurance policy was properly voided under Nevada state law. (*See* MSJ 2:11–13, ECF No. 20).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In

contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Defendant argues that the evidence in the record fails to support Plaintiff's claim of breach of contract because Defendant properly voided Mancic's insurance policy. (*See* MSJ 6:5–6, ECF No. 20). Defendant claims the policy was properly voided because had Defendant "known that [Plaintiff] was the owner or operator of the Camry, and had the [a]pplication stated that [Plaintiff] had been convicted of a felony, it would not have issued the [p]olicy to Plaintiff." (MSJ ¶ 15); (*see also* Melberg Decl. ¶¶ 11–13, Ex. 5 to MSJ, ECF No. 20-5). Defendant supports its argument with Nevada Revised Statute ("NRS") § 687B110 which provides:

> All statements and descriptions in any application for an insurance policy or annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> 1. Fraudulent;
>
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> 3. The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

NRS § 687B.110.

Based on the allegedly false statements made on the application, Defendant asserts that voiding the policy was permitted under NRS § 687B110. (MSJ 6:8–15). Defendant maintains that Plaintiff's felony convictions are material to the acceptance of risk or the hazard assumed by Defendant, which allows the policy to be voided under subsection two of NRS § 687B110. (MSJ 6:16–18).

Further, Defendant argues that even if the Court is not convinced that the felony convictions are material, Defendant is still permitted to prevent recovery based on subsection three of NRS § 687B110. (MSJ 7:1–5). Defendant contends that if it had been aware that Plaintiff was the registered owner and operator of the vehicle, it still would not have issued the policy, and thus, was justified in voiding coverage under subsection three of NRS § 687B110. (*See* Melberg Decl. ¶ 10, Ex. 5 to MSJ, ECF No. 20-5).

Plaintiff argues that although he is the registered owner of the vehicle, Mancic was the possessive owner and had full control over the vehicle. (Resp. 9:8–11, ECF No. 21). Plaintiff also argues that he was not listed as an operator of the vehicle on the application because Mancic believed Plaintiff was moving to Chicago. (Resp. 9:12–19). Moreover, Plaintiff claims that when Mancic applied for insurance coverage, the car belonged to him, and because Plaintiff was not an operator, Mancic was not required to list him on the application. (Resp. 9:21–22). Lastly, Plaintiff claims that even if Plaintiff "was listed as an operator of the [vehicle], Mancic could not have disclosed [Plaintiff's] past felony convictions because Mancic had no knowledge of [Plaintiff's] past felony convictions" and thus, "it was impossible for Mr. Mancic to misrepresent or lie on the insurance application regarding these felonies." (Resp. 10:22–25).

Plaintiff does not dispute that Mancic was not the registered owner of the vehicle or that both Mancic and Plaintiff had been using the vehicle between 2012 and 2014. (*See* Milinkovic Dep., Ex. 1. to MSJ, ECF No. 20-1). Further, there is no evidence of a final sale of the vehicle, and thus, the vehicle was still owned by Plaintiff at the time of the accident. (*see* Mancic Dep. 33:12–14, Ex. 1 to Resp, ECF No. 21-1). Plaintiff also does not dispute that Defendant had a policy that it would not issue insurance coverage to "owners or operators who have been convicted of a felony." (*See* Melberg Decl. ¶ 10, Ex. 5 to MSJ, ECF No. 20-5). Because Mancic did not disclose Plaintiff's felony convictions and ownership of the vehicle, the Court

agrees that there was a misrepresentation that was material to the acceptance of risk or that would lead the insurer to not have issued the policy under NRS § 687B110.

However, NRS § 485.3091(5)(a), which pertains to "every motor vehicle liability policy," states that "[t]he liability of the insurance carrier with respect to the insurance required by this chapter becomes *absolute* whenever *injury* or damage covered by the policy occurs." (emphasis added). Further, under that subsection, "[n]o statement made by the insured or on behalf of the insured . . . defeats or voids the policy." NRS § 485.3091(5)(a). "Nevada has a strong public policy interest in assuring that individuals who are injured in motor vehicle accidents have a source of indemnification. Our financial responsibility law reflects Nevada's interest in providing at least minimum levels of financial protection to accident victims." *Hartz v. Mitchell*, 822 P.2d 667, 669 (Nev. 1991). To provide "a policy and allow no mechanism for an injured party to recover under the statute would be inconsistent with the statute's purpose." *Torres v. Nev. Direct Ins. Co.*, 353 P.3d 1203, 1208 (Nev. 2015) (holding that no post-injury violation of a policy will release the insurer under the absolute-liability provision).

Although Defendant asserts that Plaintiff's misrepresentations allow the policy to be voided under NRS § 687B110, preventing recovery is inappropriate because NRS § 485.3091(5)(a) controls. Plaintiff suffered an accident which caused bodily injury on October 16, 2014, prior to the cancellation of the policy on May 28, 2015. (*See* Milinkovic Dep. at 5, Ex. 1 to MSJ, ECF No. 20-1); (*see also* Ex. 8 to MSJ, ECF No. 20-8). Therefore, the damage occurred while the insurance policy was still active. Plaintiff also argues that he falls under the definition of an insured person under the policy because he is Mancic's cousin, and he drove the car with Mancic's permission. (Resp. 10:7–10); (*see* Insurance Policy, Ex. 6 to MSJ at 24, ECF No. 20-6) (defining insured persons as either a "relative" to the policy holder, "anyone occupying your insured car," or anyone using the insured car with permission). Because

Mancic is related to Plaintiff, pursuant to their agreement, Plaintiff was an insured person under the policy.

The policy also states that "bodily injury means bodily harm." (*See* Insurance Policy, Ex. 6 to MSJ at 9, ECF No. 20-6). Because Plaintiff was injured while operating his relative's vehicle, it follows that the policy covers the damage that occurred. (*See* Milinkovic Dep. at 5, Ex. 1 to MSJ, ECF No. 20-1). As a result of these facts, the liability became "absolute," and "no statement" or misstatement in this case "defeats or voids the policy." NRS § 485.3091(5)(a); *see Gramercy Ins. Co. v. W. Sky Transp. Inc.*, No. 2:10-CV-2018-JCM-PAL, 2011 WL 3297931 (D. Nev. Aug. 1, 2011). Accordingly, under Nevada law, Defendant is not permitted to revoke coverage under the policy, and as such, Defendant has not negated Plaintiff's claim for breach of contract. Defendant has not met its initial burden required under summary judgment.

After reviewing the facts and drawing all inferences in the light most favorable to Plaintiff, the Court finds that summary judgment is inappropriate. For these reasons, the Court denies Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 20), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a joint pre-trial order no later than October 27, 2017.

**DATED** this 26 day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge